Filed 8/3/26  P. v. Lewis CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>DEVIN LAMONT LEWIS,<br><br>    Defendant and Appellant. | B341322<br><br>(Los Angeles County<br>Super. Ct. No. TA125019) |

APPEAL from an order of the Superior Court of Los Angeles County, Laura R. Walton, Judge.  Affirmed.

Eric R. Larson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Kenneth C. Byrne, Supervising

Deputy Attorney General, and Allison H. Chung, Deputy Attorney General, for Plaintiff and Respondent.

* * * * * *

Following an evidentiary hearing, the trial court ruled that Devin Lamont Lewis (defendant) was not entitled to resentencing under Penal Code section 1172.6[1] because the evidence showed, beyond a reasonable doubt, that he aided and abetted an attempted murder.  Defendant appeals that ruling.  Because substantial evidence supports the trial court's ruling, we affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

I.    **Facts**

A.    *The underlying crimes*

Defendant and several others took an auto dealership by force on April 5, 2010, shooting and killing two people, shooting but not killing a third, and robbing many others at gunpoint.

The day before the robbery, defendant and three others met at the home of his long-time friend Paul Jordan to rob the residence of an employee of Custom City Auto Sales (Custom City).  At the meeting, they discussed how the employee may need to be subdued or tied up at gunpoint, and someone passed out several firearms.  A subset of the group went to the employee's residence, but they aborted the plan.

On April 5, 2010, defendant, Jordan and three other men again met at Jordan's house.  From there, they drove in separate vehicles to a location near Custom City, and regrouped inside one of the vehicles—a van.  Someone passed out weapons, and both

---

1    When initially enacted, this was codified at section 1170.95.  All further statutory references are to the Penal Code unless otherwise indicated.

2

defendant and Jordan took one, although it was unclear whether defendant took a .38-caliber handgun or a different handgun. Defendant then drove the van to Custom City and backed into a parking space, making it so the van could leave quickly.

Around 8:00 p.m., defendant and Jordan entered the rear of Custom City. Vance Dean, Christopher Williams and Mark Richardson were just inside the rear door. Upon seeing two armed men enter, Williams shoved one of the armed men and hid; Dean started to argue. Dean was shot in the head, and died. As defendant and Jordan moved past Richardson toward the front of the store, Richardson started to run out the back door and was shot in the back. Once outside, he was shot a second time in the stomach by a third person running past him and into Custom City.

As defendant and Jordan continued moving toward the front of the store, they encountered a man named Melvin Hoard. Jordan demanded money from him at gunpoint; despite Hoard's acquiescence, Jordan still pulled the trigger—but the gun's safety prevented it from going off. Defendant and Jordan then entered a room near the middle of the store, where Jordan took money from the pockets of Lejon Robins, who had gotten into a shoot-out with someone and had been shot in the head. When defendant and Jordan reached the front of the store, they pointed guns at the people they found there, demanding and taking their valuables. After one of their cohorts told them they had killed another person, defendant and the others fled out the back and drove away in the van.

Law enforcement pursued, which lead to a foot chase after everyone scattered from the van. Defendant was one of the men apprehended.

3

Defendant and Jordan both tested positive for gunshot residue.

Defendant's black velour sweatpants had bloodstains that contained Richardson's DNA.

B. *Conviction and appeal*

In the operative pleading, the People charged defendant with (1) two counts of felony murder (§ 187), for Dean and Robins; (2) attempted murder (§§ 187, 664), of Richardson; (3) assault with a firearm (§ 245, subd. (a)(2)) for Williams; (4) five counts of robbery (§ 211) of the individuals in the middle and front of the store; and (5) possession of a firearm by a felon (§ 12021, subd. (a)(1)). The People also alleged the special circumstance that the murders were committed during the commission of a robbery (§ 190.2, subd. (a)(17)(A)), that the attempted murder was committed willfully, deliberately, and with premeditation, and that a principal was armed with a firearm (§ 12022, subd. (a)(1)) in the commission of the murders, attempted murder, and robberies. The People further alleged that each of defendant's two 1993 convictions for robbery constituted a "strike" within the meaning of our Three Strikes Law (§§ 1170.12, subds. (a)-(d), 667, subds. (b)-(j)), and that one of those robbery convictions constituted a prior serious felony conviction (§ 667, subd. (a)(1)).

A jury convicted defendant on all counts and found all allegations and enhancements to be true.[2] Defendant admitted he had suffered two prior strike convictions in 1993.

---

[2] Anthony McLaurin and Jordan, who were jointly tried with defendant, were found guilty of the same offenses, except that McLaurin was not charged with possession of a firearm by a felon. The others were tried separately.

4

The trial court imposed a prison sentence of two consecutive terms of life without the possibility of parole, plus an indeterminate term of 175 years to life, plus 47 years, calculated as follows:

-- On each of the murder counts, the court imposed an indeterminate term of life without the possibility of parole, plus a consecutive one-year term for the principal armed enhancement and a consecutive five-year term for the section 667, subdivision (a) allegation;

-- On the attempted murder count, the assault with a firearm count, and each of the five robbery counts, the court imposed an indeterminate term of 25 years to life, plus a consecutive five-year term for the section 667, subdivision (a) enhancement, and stayed the one-year term for the principal armed enhancement pursuant to section 654.[3] (The court ran these terms consecutively.)

A different panel of this court affirmed the judgment on direct appeal. (*People v. McLaurin et al.* (Apr. 7, 2015, B250278) [nonpub. opn.].)

## II. Procedural Background

### A. *Initial petition*

On February 19, 2019, defendant filed a petition seeking resentencing under section 1172.6.

### B. *Summary denial and reversal on appeal*

The trial court initially denied the petition on the ground that the felony-murder special circumstance was found to be true. We reversed that order. (*People v. Lewis* (Jul. 6, 2020, B298820) [nonpub. opn.].) Defendant petitioned the Supreme Court for

---

[3] The court stayed the sentence on Lewis's firearm possession conviction pursuant to section 654.

5

review.  (*People v. Lewis*, review granted Aug. 13, 2020, S263797.)

**C.** *Second summary denial due to lack of jurisdiction and second reversal on appeal*

While defendant's petition for review was still pending, the People and defendant filed further briefs in the trial court.  The trial court again summarily denied defendant's petition.  Defendant appealed again, and we reversed because the trial court lacked jurisdiction because of the pending petition before the Supreme Court.  (*People v. Lewis* (Jul. 27, 2022, B311205) [nonpub. opn.].)

**D.** *Evidentiary hearing*

Following further briefing on remand, the trial court held an evidentiary hearing on October 4, 2024.  The parties submitted the transcripts from trial, and defendant also testified, denying all knowledge and involvement in the events at Custom City.  After entertaining oral argument, the trial court denied defendant's section 1172.6 petition.  Finding defendant's testimony at the hearing to be "absolutely untruthful," the court also found beyond a reasonable doubt that (1) defendant was guilty of the murders of Dean and Robins because he was a major participant in the robbery who acted with reckless disregard for human life, and (2) defendant was guilty of the attempted murder of Richardson because he directly aided and abetted that attempted murder.

**E.** *Appeal*

Defendant filed this timely appeal.

**DISCUSSION**

On appeal, defendant contends that the trial court's finding that he directly aided and abetted in the attempted murder of Richardson is not supported by the record.[4]

## I. Pertinent Law

In 2018, our Legislature amended the definition of "murder" in our state to preclude a jury from "imput[ing]" the "[m]alice" element of that crime "based solely on [a defendant's] participation in a crime." (§ 188, subd. (a)(3).) In 2022, our Legislature amended the law to specify that section 1172.6 provides relief to defendants convicted of attempted murder under a natural and probable consequences theory. (Stats. 2021, ch. 551, § 2, subd. (a); *People v. Delgadillo* (2022) 14 Cal.5th 216, 223, fn. 3 (*Delgadillo*).) Our Legislature's purpose was to ensure that "[a] person's culpability for murder [is] premised upon that person's own actions and subjective mens rea." (Stats. 2018, ch. 1015, § 1, subd. (g).) Section 1172.6 is the procedural vehicle by which persons convicted in now-final judgments can seek to vacate convictions that rely upon theories of homicide or attempted homicide that are now invalid. (§ 1172.6, subd. (a).) Where, as here, a defendant files a facially sufficient petition and the record does not otherwise foreclose relief as a matter of law, the trial court must convene an evidentiary hearing, where the People have the burden of proving to the trial court, acting as an independent factfinder, that a defendant is guilty on a still-valid theory beyond a reasonable doubt. (§ 1172.6, subd. (d)(3).)

"'[D]irect aiding and abetting remains a valid theory of attempted murder.'" (*People v. Ramos* (2024) 103 Cal.App.5th

---

4      Defendant does not attack the trial court's finding that he is guilty of the murders of Dean and Robins.

7

460, 465.) A person is guilty of directly aiding and abetting an attempted murder if (1) the perpetrator commits the crime of attempted murder, (2) the defendant "'give[s] aid or encouragement'" to the perpetrator, and (3) the defendant knows of the perpetrator's intent to kill and shares that intent to kill. (*People v. Nguyen* (2015) 61 Cal.4th 1015, 1054; *People v. Curiel* (2023) 15 Cal.5th 433, 467 [elements of aiding and abetting]; *People v. Canizales* (2019) 7 Cal.5th 591, 602 [elements of attempted murder].) Evidence of a defendant's knowledge and intent is "'almost inevitably circumstantial.'" (*Nguyen*, at p. 1055.) Evidence "relevant" to whether a defendant has, by act or advice, aided or encouraged an attempted murder includes "'presence at the scene of the crime, companionship, and conduct before and after the offense.'" (*Id.* at p. 1054.)

In evaluating the trial court's finding that defendant is guilty of directly aiding and abetting in Richardson's murder, we apply the substantial evidence standard of review. (See *People v. Sifuentes* (2022) 83 Cal.App.5th 217, 233-234.) In so doing, we ask whether any rational trier of fact, when viewing the record in the light most favorable to guilt, could have found the defendant guilty on that theory beyond a reasonable doubt. (*People v. Vargas* (2022) 84 Cal.App.5th 943, 951; *People v. Kraft* (2000) 23 Cal.4th 978, 1053-1054.)

## II.   Analysis

Substantial evidence supports the trial court's finding that defendant directly aided and abetted in the attempted murder of Richardson. It is undisputed that the direct perpetrator(s) (assuming the shooter was not defendant)[5] committed the crime

---

[5]   If defendant was the actual killer, he remains liable under section 1172.6. (*Delgadillo, supra,* 14 Cal.5th at p. 233.)

8

of attempted murder on Richardson because Richardson was shot twice—once in the back and a second time in the stomach. Substantial evidence supports the finding that defendant aided or encouraged the shooter in the interior hallway of Custom City because he was present in the hallway while armed, and thus able to back-up, embolden and support the perpetrator who shot Richardson.  And substantial evidence supports the finding that defendant knew of the shooter's intent to kill and shared that intent.  Whether or not defendant knew of Jordan's intent to kill or himself harbored an intent to kill prior to entering Custom City, defendant was present when Jordan shot Dean in the head.  At that point, defendant knew Jordan had the intent to kill.  By choosing to remain at Jordan's side as they penetrated deeper into the Custom City building and while aware that they would likely encounter others in the building (whom Jordan would treat similarly), defendant exhibited that he also harbored an intent to kill.  (*People v. Swanson-Birabent* (2003) 114 Cal.App.4th 733, 742 ["advance knowledge is *not* a prerequisite for liability as an aider and abettor.  'Aiding and abetting may be committed "on the spur of the moment," that is, as instantaneously as the criminal act itself.'"]; see *People v. Campbell* (1994) 25 Cal.App.4th 402, 409 [finding lack of surprise by confederate's conduct supported inference of aiding and abetting].)  Defendant and Jordan encountered Richardson in the hallway mere moments later (as confirmed by Richardson's DNA in the blood on defendant's sweatpants as well as the gunshot residue on defendant's hands), at which point either Jordan or defendant shot him in the back.  (*People v. Stone* (2009) 46 Cal.4th 131, 140 ["a person who intends to kill can be guilty of attempted murder even if the person has no specific target in mind"].)

9

Defendant resists this conclusion with four arguments.

First, he argues that the evidence does not establish that he fired his firearm during the robbery. For support, defendant points to the testimony of one witness who initially told law enforcement that defendant had the .38 handgun, which other evidence showed was never fired inside Custom City. This argument fails factually and legally. It fails factually because the same witness later expressed doubt about whether defendant had the .38-caliber handgun (such that we indulge the presumption that defendant had one of the other guns that *was* fired inside Custom City).[6] More to the point, it fails legally because it does not matter whether defendant fired his weapon—that he held a weapon and used it to assist and embolden Jordan is enough to establish the actus reus of direct aiding and abetting.

Second, defendant argues that the presence of Richardson's DNA in the blood on defendant's sweatpants establishes, at most, that defendant was merely present. To be sure, mere presence at the scene of the crime is not enough by itself to establish aiding and abetting liability. (*People v. Stankewitz* (1990) 51 Cal.3d 72, 90.) But here, as explained above, defendant was more than merely present by happenstance in the hallway when Richardson was shot. He was present because he helped plan the robbery (as well as the aborted robbery the day before), met with everyone in the van, drove the van to the location, and stormed the rear entrance with Jordan.

---

[6] In his reply brief, defendant argues that the witness's later testimony did not indicate that defendant had any gun. We disagree, as the witness testified that he was not sure *which gun* defendant possessed—which necessarily indicates he had *some* gun.

10

Third, defendant argues that Richardson did not positively identify the persons who shot him inside or outside Custom City. The trial court had ample basis to reject defendant's position that he was not there at all, including the evidence that Richardson's DNA was in the blood on defendant's sweatpants.

Fourth and lastly, defendant argues that the trial court chose to affirm defendant's murder convictions on an implied malice theory (rather than an express malice theory), and urges us to treat the trial court's choice of rationale as a concession by that court that defendant lacked the intent to kill Dean and Robins, such that defendant necessarily lacked the intent to kill Richardson. We reject the premise of this argument. The trial court's decision to find guilt on one basis rather than another does not constitute a rejection of the other basis. As noted above, there is ample evidence that defendant directly aided and abetted Richardson's attempted murder.

## DISPOSITION

The order of October 4, 2024, denying defendant's section 1172.6 petition is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, P. J.
HOFFSTADT


We concur:


_____, J.
BAKER


_____, J.
KIM (D.)

12